It may not be amiss to note that as this is an action of libel the words may be actionable without imputing unchastity, as would have to be the sense of them to make them actionable if only spoken.

The judgment should be reversed.

Interlocutory judgment reversed, with costs, and demurrer overruled, with costs, with leave to the defendant to plead over on payment. All concur.

HOOKER, J. If the words had been, "There is a fellow who used to be a paramour (or a lover) of the woman," it would have been libelous; but an accepted secondary meaning of "friend" is "lover of either sex," and one province of quotation marks is to invite attention to other than the usual meaning of words. It is the province of the jury to determine the sense in which words have been used by the defendant, where they are capable of a construction which would make them actionable. Patch v. Tribune Association, 38 Hun, 368. What the defendant meant by the use of the word "friend" in quotation marks is for the jury, and the demurrer should be overruled.

---

(121 App. Div. 140)

### WOLFINGER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. July 9, 1907.)

MASTER AND SERVANT—ACTION—EVIDENCE—SUFFICIENCY.

In an action for injuries to a servant, evidence considered, and *held* insufficient to show negligence on the part of the master in failing to promulgate a rule with reference to the starting of machinery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 969.]

Appeal from Trial Term, Kings County.

Action by Carrie Wolfinger, as administratrix of the estate of Augustus Wolfinger, deceased, against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, GAYNOR, and MILLER, JJ.

I. R. Oeland, for appellant.
Frederick S. Martyn, for respondent.

JENKS, J. This action is for the negligence of a master towards its servant. The court limited the question of liability to the absence of rules. I think that the judgment for the plaintiff cannot stand. The plaintiff's intestate was a blacksmith of long service in the defendant's repair shop. Power was furnished to the emery wheel, grindstone, drill press, and forge by a shaft placed near the ceiling, about 14 feet above the floor, and worked by electricity. The intestate used this power more than his fellows. Repairs were being made to a crane used in the shop, and for this purpose a movable ladder had been rested upon the shaft, which was still. The intestate took part in the repairs, and was upon this ladder at the close of the workday, when the foreman ordered the men to quit work. The workmen were

accustomed to heat water to wash themselves by a piece of iron heated in the forge. Smith, a fellow servant, testifies that the intestate said to him that they had no hot water, and that he replied that they must have it. Smith then walked 5 feet over to the forge, put a piece of iron in it, went back to the ladder and said, "How is it on the ladder?" and the intestate answered, "Go ahead and throw it on." Thereupon Smith walked about 25 feet to the switch and closed it. The other witnesses do not detail the conversation, but they testify to the subject of it and corroborate the doings of Smith. The intestate had begun to descend when Smith had gone over to the forge. At this moment the foreman asked him to put a drift pin in the rail of the crane for the night. The intestate went up the ladder, and put his left hand on the top of the shaft, and was reaching over to insert the drift pin, when the shaft started and drew his hand and arm in. The ladder began to slide and the intestate finally fell to the floor.

The rules suggested by the plaintiff are: (1) That none should close the switch without first notifying the foreman or other men employed about the shaft; or (2) that none should close the switch unless delegated by the foreman. It must be borne in mind that, as the shaft was located, none could, under the usual conditions of the work, come in contact with it. Save the blower, the furnishing of power from the shaft depended upon the attachment of pulleys or belts. The workmen were not employed about the shaft in the sense that its motion alone could be any source of danger to them. Under the circumstances the second rule might have prevented this casualty. When Smith left the intestate, after being told to "go ahead and throw it on," he probably assumed from that remark, and also from the fact that the men had been told to quit work, that the intestate, who had started down the ladder, would leave it, and it would be removed before he (Smith) could close the switch. Smith had no reason to foresee that the intestate would attempt any further work, and so went on his way to close the switch. The intestate either forgot for the instant that he had told Smith to go ahead, or he did not understand that Smith gathered from their talk that he was to close the switch immediately, or in any event there was some misunderstanding. Of course, if the starting of the shaft involved a danger to the intestate in his attempt to obey the foreman, which the foreman foresaw, a rule which required the foreman's assent before Smith closed the switch, if obeyed, would have saved the intestate.

But the question is whether the failure to adopt such a rule is the omission of that reasonable care which should, from the nature of the business, have foreseen and anticipated its necessity to protect the intestate. Morgan v. Hudson River Ore & Iron Co., 133 N. Y. 666, 670, 31 N. E. 234. The mere absence of a rule which, if made and enforced, would have prevented a casualty, is not enough; for, as Martin, J., says in Larow v. N. Y., L. E. & W. R. R. Co., 61 Hun. 11, 15 N. Y. Supp. 384, cited with approval in Morgan Case, supra:

"If the principle involved in this case is to be upheld, it would seem to follow that in every case of an injury to an employé ingenious counsel would be able to invent some rule and claim that it should have been adopted and promulgated by the company, and thus present a question as to the defendant's

negligence. The effect of such a rule, when taken in connection with the uniform tendency of juries to find against railroad companies, would be practically to make such companies, insurers of their employés."

The judgment and orders are reversed, and a new trial is granted.

Judgment and orders reversed, and new trial granted; cost to abide the event. All concur.